**JK**



# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER**, d/b/a Snodgrass Publishing Group, 4247 Locust Street, #806, Philadelphia, PA 19104,<br><br>Plaintiff<br><br>v.<br><br>**GOOGLE, INC.**, a Delaware corporation doing business in Pennsylvania, c/o Corporation Service Company 2711 Centerville Road, Suite 400 Wilmington, DE 19808. and John Does #1-50,000,<br><br>Defendants | CASE NO.: 04cv3918<br><br>Judge: James McGirr Kelly<br><br>**FILED**<br>AUG 18 2004<br>MICHAEL E. KUNZ, Clerk<br>By_____ Dep. Clerk |

## COMPLAINT FOR COPYRIGHT INFRINGEMENT, DEFAMATION, INVASION OF PRIVACY, NEGLIGENCE, LANHAM ACT, AND RICO VIOLATIONS PREDICATED ON 18 USC §1962(a)

Plaintiff in the above-styled action submits this Complaint in the above-styled action, and in support thereof, sets forth and avers the following.

### THE PARTIES

1.    Plaintiff **Gordon Roy Parker** ("Plaintiff") is an adult male resident of the United States, who resides and is domiciled at 4247 Locust Street, #806, Philadelphia, PA, 19104. Plaintiff does business in the state of Pennsylvania as **Snodgrass Publishing Group**, a sole proprietorship registered in Pennsylvania and licensed to do business in Philadelphia, headquartered at 4247 Locust Street, #806, Philadelphia, PA 19104.

2.    Defendant Google, Inc. ("Google") is a Delaware Corporation headquartered in California, who can be served through its registered agent, Corporation Service Company 2711 Centerville Road, Suite 400 Wilmington, DE 19808. It does business primarily through its website, which is located at http://www.google.com.

3.   The "50,000" John Does represent Google's partners through its "AdSense" and "AdWords" programs, whereby Google "sells" the results of certain words (or phrases) that internet users enter into its search engine.

## NATURE OF COMPLAINT AND STATEMENT OF JURISDICTION

4.   This is a complaint for copyright infringement, defamation (including libel and false-light invasion of privacy), tortious interference, invasion of privacy, negligence Lanham Act, and Rico Violations Predicated On 18 USC §1962(a).

5.   Jurisdiction is proper in this venue because of:

    a.   The copyright infringement claim (18 USC §107 *et seq.*)

    b.   The Lanham Act claims (42 USC §1125 *et seq.*);

    c.   The RICO claim (18 USC §1964(c), predicated on violations of 18 USC §1962(a));

    d.   The existence of multiple federal questions (28 USC §1331).

    e.   Google doing business in Philadelphia subjects itself to jurisdiction in the Eastern District of Pennsylvania; and

    f.   The alleged copyright infringement involved the pirating of material which was published by Plaintiff on his website, www.cybersheet.com, which was hosted during the time in controversy in Bucks County, Pennsylvania through NuNet, Inc.

## BACKGROUND

### About Google

6.   Google earns money primarily through its website, which contains the following features:

a.    A "search engine," which allows users to type in any word or phrase and get results from Google's web database, which includes full copies of every site returned in the search results (otherwise the search results would not be possible).

b.    Unless instructed otherwise by the website owner, Google produces a "cache" copy of every website in its search results, which is a full copy of each website returned by the results, as it existed the most recent time Google "crawled" the internet.

c.    A USENET archive of messages posted to various USENET newsgroups. The term "USENET" is short for "user network." USENET is a decentralized system of message boards that are connected to by "news servers," or computers that store the messages. A message which is posted to any news server is then distributed to the other news servers that carry the group. Google has a web-based news server from which its USENET archive is in part derived. The remainder of the USENET archive consists of postings dating back to 1981. This archive is now maintained by Google and was purchased from the AltaVista Corporation in or around 1999-2000.

d.    Branding of search services provided through client websites that want to offer search capabilities to their customers. Google also has a technology that allows users to search a given website for any search keyword or phrase.

e.    An "AdWords" program that provides sponsored links that are tied to the search results for search keywords or phrases. For example, a lawnmower manufacturer could purchase placement among the search results for "lawn."

f.    An "AdSense" program that provides sponsored links to individual websites which relate to the content of those websites.

7.    Google's internet and USENET archives are "opt out" to the extent that users must notify Google (if in fact they know Google or its archives exist) that they do not wish to have

their sites cached or their USENET posts archived.  Google will heed those requests, but it will not heed requests not to be included at all in its website search results, which return portions of the text from each site that contain the search text.

8.    Absent a copyright infringement, only the author of a message or a website can remove reproductions of that content from Google's USENET archive and search engine cache feature.

9.    The term "to Google" means to search Google, usually for information about an individual, but also about topics, corporations, or specific terms relating to anything.

10.   Typing an individual's legal name into the Google search engine will yield search results with excerpts from, links to, and usually a cached copy of each site which contains the name.  If the name is put in quotes, i.e., "Gordon Roy Parker," then only those sites which contain the Plaintiff's complete name in its proper spelling will turn up in the results.

11.   According to its most recent SEC filing, Google made a profit of $74 million in its most recent completed fiscal quarter.

### Google And The Plaintiff

12.   Plaintiff is the author of several (registered) copyrighted works, some of which are available for free on the internet, while others are for sale.  All of his works are relevant to this action, but most relevant is "The Seduction Library," which includes three of Plaintiff's works: *Outfoxing The Foxes, 29 Reasons Not To Be A Nice Guy,* and *Perfect Seduction.*

13.   The books which comprise The Seduction Library went on sale beginning in October 1998.  During the spring and early summer of 2001, *Perfect Seduction* remained on sale, while the other two books were made available free of charge on Plaintiff's website.

14. In or around July 2001, Plaintiff removed the two free books from his website and made the *The Seduction Library* a premium product once again. Internet users no longer had access to the free books unless they had accessed them while they were free.

15. On October 7, 2001, a message was posted to the alt.seduction.fast ("ASF") USENET group from an @home.com account belonging to a Mr. Steve Trunk, of San Diego, California.[1] The message directed ASF users to Google's website, where, unbeknownst to Plaintiff, copies of his free books had been "cached" on Google's website. The message, excerpted below in pertinent part, gave users explicit instructions on how to download the cached copies of Plaintiff's work:

> Message-ID: <3BC0B6DC.D3389203@home.com>
> From: Odious <Odious@home.com>
> Newsgroups: alt.seduction.fast,alt.romance
> Subject: !LOL! Just How Stupid Is Ray Gordon???
> Date: Sun, 07 Oct 2001 20:08:59 GMT
> NNTP-Posting-Host: 24.4.92.141
> X-Complaints-To: abuse@home.net
> X-Trace: news1.rdc1.sdca.home.com 1002485339 24.4.92.141 (Sun, 07 Oct 2001
> 13:08:59 PDT)
> NNTP-Posting-Date: Sun, 07 Oct 2001 13:08:59 PDT
>
> I thought sure Gordo is stupid enough to try to get people to pay 30 bucks just to access his web site, but was he stupid enough to do so when the material he is selling exists on web archives or caches. The answer is a resounding yes. I shit you not. You see *when Gordo was giving his books away for free on his web site, he put them into the public domain,* and various web archives made copies of his page at that time using spider searches. *So I went to google.com* and typed in Ray's URLs and there they were, *archived copies of Ray's books* from his web site.... However *it is funny as hell that ray is running around trying to charge 30 bucks for something that was cached when it was free and can be accessed for free.*
>
> Ray is so stupid and inept, he probably doesn't even know that there are numerous spider caches all over the web. Discovering that his books are available from these sources is going to really piss gordo off. And the best part is, *there's not a damn thing ray can do about it,* as he is the one who put the material out there for free. Here are some of the URLS to type into the google search to access the cache.
>
> Just go to:
> http://www.google.com/advanced_search

---

[1] Plaintiff avers, upon information and belief, that the actual message was posted by Derek Trunk, his son. A copy of the full message is attached hereto as Exhibit A and incorporated by reference as if fully set forth verbatim herein.

then type cybersheet.com into the domain field and a few search terms
like fox, foxhunting, and ASF into the field. You'll get all of ray's shit, and a nice good
view of just how much material he has stolen from usenet groups and other seduction
sources like Ross' stuff and mystery's stuff and my stuff.

NOTE, don't click on the links below, simply cut and paste them one by
one into the search field on google.com then click on the cached copy
link:

http://www.cybersheet.com/library/29reasons/15.html.

http://www.cybersheet.com/hypno/index2.html

http://www.cybersheet.com/library/returningfox.html
Http://www.cybersheet.com/library/ftow.html
http://www.cybersheet.com/library/reversetimetable.html
http://www.cybersheet.com/library/rejection.html
http://www.cybersheet.com/library/boyfrienddestroyer.html
http://www.cybersheet.com/library/blurring.html
http://www.cybersheet.com/perfect.html

http://www.cybersheet.com/foxes.html
http://www.cybersheet.com/library/foxes/foreword.html
http://www.cybersheet.com/library/foxes/intro.html
http://www.cybersheet.com/library/foxes/1.html
http://www.cybersheet.com/library/foxes/2.html
http://www.cybersheet.com/library/foxes/3.html
http://www.cybersheet.com/library/foxes/4.html
http://www.cybersheet.com/library/foxes/5.html
http://www.cybersheet.com/library/foxes/6.html
http://www.cybersheet.com/library/foxes/7.html
http://www.cybersheet.com/library/foxes/8.html
http://www.cybersheet.com/library/foxes/9.html
http://www.cybersheet.com/library/foxes/10.html

16.  This was more or less an ambush against Plaintiff by someone who understood search

engines and cached websites better than Plaintiff.  Users of ASF often purchase books on

seduction such as those written by Plaintiff, and these users were given unauthorized access to

Plaintiff's premium content through Google's cache system.

17.  Per notification from Plaintiff once he learned of the cache, Google no longer retains

cached versions of his website.  However, Google does retain a copy of the site on its server for

the purpose of returning text from the site in search results (otherwise it would not be possible to

search for the text).

18. Google's web search engine allows users to type any search term, including Plaintiff's legal name, into its search engine. Users who do this will get search results that include every site on the internet that mentions Plaintiff's name (if they type it in quotes, i.e., "Gordon Roy Parker"). Indeed, this process has already become a commonly used verb; searching for information about someone on the internet is now commonly referred to as "Googling" them.

19. Google's USENET archive allows users to search USENET postings by author (either the author's name or e-mail address). For example, typing "LeModernCaveman@aol.com" into the "author" box will return all USENET posts by Plaintiff that have not been "nuked" from the archive.

20. Google's search engine has so transformed our society that the first thing many individuals do upon meeting someone new is "Google" their name.[2]

21. Experienced internet and USENET users are well aware of what Google does, and often tailor their messages so that they will turn up whenever a specific term is searched for. This is especially true of individuals that the users are attempting to defame or call unwanted attention to.

22. In Parker v. Learn The Skills Corp. et al. (E.D.Pa. #03-cv-6936, Hon. J. Kelly), Plaintiff alleged a RICO enterprise designed to harm his publishing business and to interfere with his employment and the contracts which comprise his personal life. The purpose of the enterprise (loosely called "the seduction community" for one RICO enterprise and Defendant LTSC for the other), was to divert internet traffic to the LTSC website, and to other websites published by members of the community. That case is currently pending.

---

[2] Indeed, on the "Regis And Kelly" television show on or about April 17, 2004, Amy Porter described the process of "Googling" someone, and referred to it as a way of getting "information" about that person.

23. Part of the RICO enterprise outlined in Parker v. LTSC involved the use of a website located at, among other places, http://www.ray-gordon.com. The contents of this website, entitled "The Official Ray Gordon FAQ: A Document About Gordon Roy Parker" (the RayFAQ" or "the RayFAQ website") have been republished on USENET (and archived by Google), and have also been linked to in other USENET posts, including those made by an internet user calling itself the "Editorial Staff" (Doe #8 in Parker v. LTSC) who posts to USENET through an anonymous remailer (and who is therefore untraceable), who has posted links to the RayFAQ website, and who has posted the contents of the RayFAQ website directly to USENET at times.

24. Earlier this year, Plaintiff successfully removed the RayFAQ from its host via a DMCA takedown notice that was not rebutted. The site has since been republished at other locations and often reappears shortly after a takedown. It has also been published directly to USENET when no webhost is available.

25. On July 24, 2004 at 12:23 a.m., Plaintiff searched Google Groups (USENET) search for the phrase "The Official Ray Gordon FAQ." Following is a screen capture of the results.



26.  On July 24, 2004 at 12:39 a.m., Plaintiff typed "Seduction" into Google's web search engine, and in addition to the search results, sponsored links for various websites[3] appeared on the right side of the webpage, as follows:



27.  At 12:28 a.m. of July 24, 2004, Plaintiff typed "Gordon Roy Parker" into Google's web search and retrieved the following results:



---

[3] This is Google's "AdWords" program, where businesses pay for placement next to specific words.

28.  On July 24, 2004 at 12:39 a.m., Plaintiff typed "Gordon Roy Parker" into Google's USENET search engine (http://www.google.com/group_search), and in addition to the search results, a sponsored link[4] appeared on the right side of the webpage, as follows:



29.  The act of "Googling" Plaintiff's name in its web archive turns up the RayFAQ on the first page of 205 results of sites which contain his full birth name.  Anyone with whom Plaintiff comes into personal contact or does business with will learn of these sites and their content anytime they "Google" him.

30.  On Thursday, August 5, 2004, Plaintiff searched Google for "Penny Parker" (his mother), and their telephone number.  The following resulted:

---

[4] The sponsored link appears to have been triggered by the use of the name "Parker," although the search was specifically for Plaintiff's name.



31.  At all times of publication and republication, Defendant Google either knew or should have known, or recklessly disregarded the truth that Ms. Parker is not now and has never been a prostitute, nor was she the author of any of these postings, which Google has archived for several years.

32.  Google has created a situation whereby anything that is published to a website is literally broadcast to the entire world, regardless of content, and regardless of whether or not the original author wants the site included in Google's search results.  Using third-party content without permission, and at times not even allowing the user to "opt out" (such as with the search results), it builds an audience to which it sells advertisements, and, as shown above, places those advertisements directly on the search results for an individual's name, allowing them to profit from the "unauthorized biography" of any public figure, or "invasion of privacy" of any private figure.

33.  Plaintiff avers that, for the purposes of this lawsuit, he is a private figure. Alternatively, he argues that if "Ray Gordon" is a public figure, then he is still a private figure as "Gordon Roy Parker" (his birth name).

34.  An internet search by Plaintiff, conducted at 12:30 a.m. on Tuesday, August 3, 2004, and for the search term "Ray Gordon FAQ" from the ray-gordon.com website revealed, as the screenshot below demonstrates, that as of this date and time, Google was still caching the RayFAQ website:



35.  As mentioned in paragraph 24, Plaintiff had successfully removed the RayFAQ from its original host (through a DMCA complaint to Verio), and removed a republication of the RayFAQ that appeared shortly thereafter on a Geocities/Yahoo! website.[5]

36.  On or about March 28, 2003, Plaintiff posted "Reason #6" from his registered copyrighted work ***29 Reasons Not To Be A Nice Guy*** to ASF.  Doing this allows readers of USENET to read Plaintiff's writing without having to visit his website.  The posting was only intended for the ASF audience.

---

[5] The DMCA notices to NamesDirect.com and to Yahoo! are attached hereto as Exhibits B-1 and B-2, respectively, and incorporated by reference as if fully set forth verbatim herein.  It should be noted that right-to-publicity and invasion-of-privacy issues are not covered by the DMCA, and that this had posed a problem in the past for Plaintiff.

37.  In response to the posting, someone posting through an anonymous remailer at Denmark-based dizum.com (whose identity even Dizum does not know), reposted the entire message,[6] which was still archived by Google, as the following screenshot, taken by Plaintiff on Tuesday, August 3, 2004 at 5:24 a.m. shows:



38.  This is but one example of how "involuntary archiving" causes copyright infringement of Plaintiff's works.  Google's USENET archive makes permanent the publication to USENET of anything not "nuked" by the author.  While it is true that a DMCA takedown notice could remove a singular infringing article from the web, the fact is that such notices would have to be sent perpetually, as well as having Google's website constantly monitored for archive infringement, thus unfairly burdening Plaintiff by draining his resources in a manner similar to how Napster drained the resources of the RIAA.  This makes Google analogous to Napster in that one could, in theory, notify Napster of every possible infringement, but the scale problems

---

[6]The full text of the infringing anonymous message is attached hereto as Exhibit C and incorporated by reference as if fully set forth verbatim herein.

are similar. The DMCA generally proscribes an ISP or content provider allowing repeat infringement to occur.

39. In addition to the involuntary archiving of Plaintiff's registered work (Reason #6), many other messages of Plaintiff's have been involuntarily archived by third parties, some of whom post anonymously, thus making it impossible, short of a DMCA notice for each infringement, for Plaintiff to remove the messages under Google's policy that only the author can "nuke" a posting.

## Defamation Of Plaintiff On Google

40. Google's USENET archive contains literally thousands of messages concerning Plaintiff, many of which are defamatory, harassing, threatening, or otherwise designed to cause pecuniary and other injury to Plaintiff. These messages refer to Plaintiff both under his birth name (Gordon Roy Parker) and his pseudonym, Ray Gordon. Many of the messages were presented in Parker v. Wintermute (E.D.Pa. #02-cv-7215) and in Parker v. Learn The Skills Corporation, a case in which Google was subpoenaed in October 2002.

41. This complaint would run thousands of pages if Plaintiff were to outline all of the defamation of him that now sits in Google's web and USENET archives. On a given *day* on USENET, Plaintiff might experience being called a child molester, scam artist, accused of passing off his own digitally altered voice as that of "Hellen" (a woman he hired to make a hypnosis recording which he now sells), to claims that he has plagiarized the work of others or that he is unemployable in general.

42. Many of the defamatory messages are written with Google in mind, and include Plaintiff's full birth name, and at times his city of residence. One such message, posted anonymously by the self-titled "Editorial Staff" of the RayFAQ on July 26, 2004, lists tons of contacts in Philadelphia (including FBI, the courts, attorneys for the University of Pennsylvania,

and others) and refers to Plaintiff as a "criminal" while imputing that officers of the court and others in law enforcement (and in other messages, mental health agencies) have "had dealings with" Plaintiff.  It states, in pertinent part:

> The Honorable James McGirr Kelly
> United States District Court for the Eastern District of Pennsylvania
> U.S. Courthouse
> 601 Market Street, Room # 7613
> Philadelphia, PA 19106-1744
> (215) 686-2910 Municipal Court Civil Division
> courts@phila.gov
>
> Contact: http://courts.phila.gov/email.html
> ---
> Michael E. Kunz, Clerk of Court
> United States District Court for the Eastern District of Pennsylvania
> U.S. Courthouse
> 601 Market Street, Room 2609
> Philadelphia, PA 19106-1797
> PAED_clerksoffice@paed.uscourts.gov
> ---
> Philadelphia Field Office
> Federal Bureau of Investigation
> 8th. Floor, William J. Green Jr. FOB
> 600 Arch Street
> Philadelphia, Pennsylvania 19106
>
> Home Page: http://philadelphia.fbi.gov/
> e-mail: philadelphia@fbi.gov
>
> For computer intrusion or hacking
> complaints contact: sq9.ph@fbi.gov
> ---
> Pennsylvania State Police, Philadelphia Station
> 2201 Belmont Avenue, Philadelphia, PA 19131
> Bureau of Criminal Investigation
> Telephone: 717-783-5524 Fax: 717-705-2306
> http://www.psp.state.pa.us/
>
> Computer Crimes Unit: Trooper Jon S. Nelson
> Office:610-344-4471
> Pager:866-284-1603 (Toll Free)
> e-mail: jonelson@state.pa.us
> ---
> Sidney Booker, Special Chief Deputy
> John Green, Sheriff
> Philadelphia Sheriff's Office
> 100 South Broad - 5
> Philadelphia, Pennsylvania 19106
> Phone: 215-686-3530, Fax: 215-686-3971
> http://www.phillysheriff.com
> e-mail: johgrn@cs.com
> ---
> The City of Philadelphia Police Department

15

One Franklin Square
Philadelphia, Pennsylvania 19106
http://www.ppdonline.org
16th Police District
3900 Lancaster Ave.    19104
Crime Prevention Officer: (215)686-3163
Victim Assistance Officer: (215)686-3162
---
Captain William Cope
District Attorney's Office
Municipal Court Building
1421 Arch Street
Philadelphia, Pennsylvania 19102
Phone: 215-686-8000
e-mail: DA_WEBMAIL@phila.gov
---
Sidney Booker, Special Chief Deputy
John Green, Sheriff
Philadelphia Sheriff's Office
100 South Broad - 5
Philadelphia, Pennsylvania 19106
Phone: 215-686-3530, Fax: 215-686-3971
http://www.phillysheriff.com
e-mail: johgrn@cs.com
---
Edward McCann
Assistant District Attorney
Municipal Court Building
 1421 Arch Street
Philadelphia, Pennsylvania 19102
Phone: 215-686-8000
e-mail: DA_WEBMAIL@phila.gov
---
Frank Montemuro, Jr.
Senior Judge
Philadelphia Superior Court
1101 Market Street
Philadelphia, Pennsylvania 19106
(215) 560-5825
---
Philadelphia Courts
Municipal Court - Civil Division
34 South 11th Street
Philadelphia, PA. 19107
(215) 686-9300 Domestic Relations
(215) 686-9301 Domestic Relations
(215) 686-2910 Municipal Court Civil Division

Contact: http://courts.phila.gov/email.html
courts@phila.gov
---
Eric A. Tilles, Esq.
Associate General Counsel
The University of Pennsylvania
Suite 300, 133 So. 36th St.
Philadelphia, PA 19104-3246
215-746-5250

FAX: 215-746-5222
eric.tilles@ogc.upenn.edu
---
Jeffery T. Karp
Attorney at Law
1 McKinley Square
Boston, MA 02109
---
Matthew S. Wolf
1236K Brace Road
Cherry Hill, NJ 08034
---
Crystal D. Deazle
Montgomery, McCracken, Walker & Rhoads, LLP
123 S. Broad Street
Philadelphia, PA 19109
215-772-1500
---
John M. Myers
Montgomery, McCracken, Walker & Rhoads, LLP
123 S. Broad Street
Philadelphia, PA 19109
215-772-7535
Fax : 215-772-7620
---
Jonathan Howland Pyle
Montgomery, McCracken, Walker & Rhoads, LLP
123 S. Broad Street
24th Floor
Philadelphia, PA 19109
215-772-7655
Email: jpyle@mmwr.com

ALL of these people have a vested interest in upholding the law, as they are all Officers of the Court. They ALL have had dealings with the CRIMINAL known as Gordon Roy Parker.

Send each of them copies of EVERYTHING you have that Gordon Roy Parker has posted, claiming victory, slamming the court, and committing the crime of BARRATRY, as well as stomping on the FIRST AMENDMENT rights of American Citizens to republish PUBLIC DOCUMENTS from the Court Dockets.

Unless or until EVERYONE stands up and fights back against this gross violation of our rights, ALL of us will be in danger of losing them. We will ALL be held captive by Gordon Roy Parker.[7]

43.   Plaintiff avers that at the time of publication, the "Editorial Staff" either knew or

should have known that the above statements were false and that Plaintiff is neither "a criminal"

nor has he "had dealings" (in the criminal sense) with any of the above-mentioned agencies.

---

[7] The message ID is 8EQ4E2GF38193.9322800926@anonymous.  The message is archived at google at http://groups.google.com/groups?selm=8EQ4E2GF38193.9322800926%40anonymous&output=gplain.  The text of the full message is attached hereto as Exhibit D-1 and incorporated by reference as if fully set forth verbatim herein.

44. Plaintiff avers that the statements made by the Editorial staff were made with common-law malice towards Plaintiff because of his legal and ISP actions relating to the RayFAQ.

45. Plaintiff avers that he has suffered harm to his reputation, and economic harm caused by employers being less likely to hire him, and businesses or individuals being less likely to do business with him, after searching for his name on Google ("Googling") Plaintiff.

46. Because of "Googling," anytime Plaintiff encounters anyone, anywhere – be it for a job, place to live, friendship, relationship, in the course of his business, or his romantic relationships – messages such as this one will turn up in a Google USENET search, and in a Google web search if the USENET messages have been archived on any third party websites.

47. It is worth noting that even if Plaintiff had never established any presence on the internet, that his name would still turn up in search results, because of an article which appeared in the *Daily Pennsylvanian* on March 20, 2004, reporting on Plaintiff's employment-discrimination lawsuit against the University of Pennsylvania (Parker v. University of Pennsylvania, E.D.Pa. #02-cv-567). The article itself, which is still archived on the DP website (and Google), was the subject of libel action, Parker v. Tilles et al., (Court of Common Pleas of Philadelphia, #02-1068, September Term, 2002). Consequently, any potential employer who "Googles" Plaintiff's name will learn that he has filed a Title VII lawsuit.

48. Because messages such as the one quoted in Paragraph 42 above were authored anonymously, and because they do not violate the DMCA, there is no legal basis for Plaintiff to demand their removal, and there is no way for Plaintiff to sue the author of the message for defamation or invasion of privacy, since authorship can never be proven. Plaintiff is literally defenseless against the permanent defamation which lands in Google's archives through USENET.

49.  A reasonable person, when confronted with the statements made concerning Plaintiff, is likely to form a negative or questionable opinion of him, often without any long-term personal knowledge of Plaintiff to form his own opinion.  Such a person will usually "Google" Plaintiff upon meeting him and form his or her first impression of him in large part based on what the search results for his name reveal.  Consequently, it has become prudent for Plaintiff to interact with as few individuals as possible, lest the defamation spread further into his personal life.  Even in situations where individuals may not believe what they read, Plaintiff still is put into a position where he has to prove himself where otherwise he would be given the benefit of a greater doubt.

50.  There is currently no way for Plaintiff to avoid republication of defamation through the "Googling" of his name now or at any time in the future.  Some other examples a quick perusal of the archives found included the following statements concerning Plaintiff:

a.  A posting from January 16, 1999[8] in which the author (username "PhillyCop8@aol.com") purported to post Plaintiff's "rap sheet," including the following:

```
REQUEST: aka,PARKER, RAY            PARKER, ROY
              PARKER, RAY GORDON
              PARKER, GORDON ROY
              PARKER, WALTERSearch attach?: All Known
QUERY RETURNED 2 HITS: PARKER, RAY
                       PARKER, ROY
CASE                   DATE         REF
------------------------------------------------------------------------
----------------
71PA211326APR789       13FEB71      SHOPLIFTING
71PA367608APR812       22MAR71      VANDALISM
71PA369783APR904       09SEP71      SHOPLIFTING
72PA754329APR213       02JAN72      EXHIBITIONISM
72PA267399APR342       11APR72      SEX. ASSAULT
```

b.  A posting from July 14, 2002[9] in which the author ("John C. Randolph") used Plaintiff's birth name and called him unemployable, including the following statements:

---

[8] The full text of the postng, message ID #19990115223132.00993.00000888@ng16.aol.com, and archived at http://www.google.com/groups?selm=19990115223132.00993.00000888%40ng16.aol.com&output=gplain, is attached hereto as Exhibit D-2 and incorporated by reference as if fully stated verbatim herein.

A Modern Caveman wrote:
>
> Isn't this newsgroup for SEDUCTION ADVICE?

Yeah, but there's this snivelling loser who keeps clogging it up with off-topic bullshit like whining about how unemployable he is.  If you could just get that Gordon Roy Parker character to fuck off, this neswgroup could get back on track.

    c.   Literally hundreds or thousands of defamatory messages regarding Plaintiff, his business, his writing, and his skill in his profession, as well as statements which impute upon him criminal activity.:

## Google And Sponsored Links

51.  Google's USENET and web search engines are comprised almost entirely of the works of third parties, for which they have not usually obtained permission to reproduce.

52.  Google's USENET archive is separate from Google Groups (its news service), in that USENET message boards are presented without search features (such as searching for messages by author or for messages containing someone's name), with messages deleted from the news server after a set period of time, as opposed to remaining permanently archived as they are on Google.

53.  Google's web cache consists primarily of the entire content of third-party websites for which Google has not usually obtained permission to republish on its server through its cache.

54.  Anytime someone searches for Plaintiff by his birth name, pen name, or the e-mail addresses from which he posts, Google's USENET search engine publishes a derivative compilation of Plaintiff's work for which it has not obtained permission.

55.  As previously averred, anytime someone searches for Plaintiff by his birth name, Google's search engine compiles and publishes an unauthorized biography of Plaintiff.

---

[9] The full text of the postng, message ID # 3D3265D5.5C9D7D6D@idiom.com, and archived at http://www.google.com/groups?selm=3D3265D5.5C9D7D6D%40idiom.com&output=gplain, is attached hereto as Exhibit D-3 and incorporated by reference as if fully stated verbatim herein.  A search of Google Groups for "Gordon Roy Parker" and "unemployable" returned 19 hits.

56. Google realizes revenue from searches for Plaintiff as outlined hereinabove by marketing its own website (i.e., using the search feature to lure visitors to the site), and through the selling of sponsored links and "AdWords" to its advertisers, whose links are then provided to Google users.

57. Google is using infringed material as the basis for generating revenue for its site. Moreover, the revenue it generates comes at the expense of those against whom it is infringing. For example, an internet search for any number of seduction-related topics will yield Plaintiff's website in the search results, along with sponsored links for other seduction-information sites which are in direct competition with Plaintiff.

58. Because Google does not allow Plaintiff to "opt out" of appearing in its search results, Plaintiff has lost all control over where he may allow his content to reappear on the web, a well-established right under copyright law.

59. If copyright law were strictly enforced on the web, search engines would not be the preferred business model for information location on the web. Indeed, Plaintiff's idea for Linkway (a human-constructed and edited directory of websites) would not infringe on anyone's copyrights, and would have been able to compete in the absence of the robotic "garbage collector" approach of the spider-bots that grab literally everything on the web and throw it into their index, believing they are immune to copyright law. Were there no copyright law, a search engine would not be infringing, but since there is, one cannot ignore that legal alternatives exist that would at least equally serve the public need for internet information location and retrieval. The existence of the search engines has precluded ventures such as Linkway from ever getting off the ground, and the resulting advertising revenue from searches would merely transfer to the owners of the human-edited directories, who would not have to deal with copyright-infringement

21

claims. For a court to give preference to an illegal business model that damages individuals and businesses alike over a legal alternative is unprecedented.

60. Plaintiff avers that through its sponsored links and Adwords programs, Google is using Plaintiff's own copyrighted material (as well as that of others similarly situated) to siphon revenue from him and unjustly enrich itself.

## Relevant Predicate RICO Acts

61. Google is a "walking 1962(a) violation" in that it has become corrupted by dozens if not hundreds of RICO enterprises which exist on the web. The events which lead to <u>Parker v. Learn The Skills Corp.</u> are typical of what happens whenever an "internet cabal" decides to target an individual. Google plays a role in this process and profits from that role through the use of its site to facilitate the enterprise and through the advertisements it sells.

62. The RICO enterprises at issue here benefit from Google because Google allows them either to link to material through their site, or to simply tell people which terms to search for. For example, one might say "do a google search for [Plaintiff] for more information about him," while knowing full well that the RayFAQ (illegally archived on Google) will turn up.

63. Because of Plaintiff's success in removing the RayFAQ from its host websites, a new RICO conspiracy has taken form on the internet. Google is the RICO enterprise for this conspiracy in that it is engaged in the legitimate business of providing internet searches, but has been corrupted by the RICO conspirators for the purpose of committing predicate acts against Plaintiff.

64. On July 26, 2004 (shortly after the RayFAQ had been removed from yet another host), an internet user calling himself "Mr. Brown" reposted the RayFAQ in its entirety.[10] Once

---

[10] Part I of the FAQ, which was republished as message-ID PsmdnasItY0x3JjcRVn-vw@is.co.za, is attached hereto as Exhibit E-1 and incorporated by reference as if fully set forth verbatim herein.

again, the document calls itself "The OFFICIAL Ray Gordon FAQ" and urges others to act out

against Plaintiff. It is excerpted in pertinent part:

> The OFFICIAL Ray Gordon FAQ was created to solve the deadlock The idea is to provide
> the warning for new readers by collecting a page with a lot of examples about Ray's
> behavior and his e-mail addresses. We don't need flame wars or comments on Ray's
> writings any more as anyone can read The OFFICIAL Ray Gordon FAQ. If no one posts any
> responses to Ray's writings, he won't get the attention any more and it's only a
> matter of time before he gets tired. So let's let him write but let's also warn
> people without adding to the amount of off-topic articles.

> This might be all well intentioned, but as we've all seen, Ray doesn't care how many
> people flame him, nor does he care what his public image is. It will likely take some
> intervention somewhere, but until then, usenet will have to deal with it. To find out
> what you can do about it, if you are harassed, visit the "What can I do about Ray" page.

65. Plaintiff avers that "Mr. Brown" posted the RayFAQ to USENET for the explicit

purposes of a) having it turn up under any search for Plaintiff's name, b) letting third parties link

to the Google archive of the posting while claiming immunity under 47 USC §230 (the same law

Google claims gives it immunity), and c) requiring Plaintiff to sue the "source" of the posting in

South Africa, or complain to the South African-based ISP about copyright infringement when

said ISP has no presence in America and nothing to fear from the judgment of an American

court.

66. Plaintiff avers that the purpose of "Mr. Brown" reposting the RayFAQ was to, in

direct response to learning about <u>Parker v. Learn The Skills Corp.,</u> intimidate him by interfering

with his employment and livelihood, and to extort his silence on USENET for the purpose of

obtaining property in the form of market share and audience for Plaintiff's business rivals in the

seduction-advice industry.

67. Plaintiff avers that the purpose of the reposting of the RayFAQ was to interfere with

Plaintiff's personal life, including any contracts (such as for housing and employment) which

encompass it, for the purpose of destroying his resources and income potential, for the purpose

of obtaining property in the form of market share and audience for Plaintiff's business rivals in

the seduction-advice industry.

68. Plaintiff avers that the RayFAQ was reposted in retaliation for his having filed <u>Parker v. Wintermute et al.</u>, <u>Parker v. Learn The Skills Corp.</u> and <u>Parker v. University of Pennsylvania</u>.

69. On July 23, 2004, "Mr. Brown" posted a link to the RayFAQ while it was hosted on the Geocities cite. That message had the subject title "Ray Gordon FAQ still available – Everything you need to know about Ray. FREE!!![11] The copy of the RayFAQ on the Geocities site at the time was identical to Exhibit C from the Complaint in <u>Parker v. Learn The Skills Corp.</u>.

70. The July 23, 2004 posting linked to the entire RayFAQ (as opposed to the one-third or so of the document that was reposted to USENET), and incorporated all of the conduct outlined in <u>Parker v. Learn The Skills Corp.</u>, including urging readers to contact (in Philadelphia) the media, law enforcement at every level, and mental health agencies.

71. Plaintiff avers that the July 23, 2004 linking to the RayFAQ was designed for the express purpose of using Google to aid those who search for Plaintiff by name to uncover the RayFAQ, for the purpose of intimidating him and interfering with his business, employment, and personal life in retaliation for his having filed <u>Parker v. Wintermute et al.</u>, <u>Parker v. Learn The Skills Corp.</u> and <u>Parker v. University of Pennsylvania</u>.

72. On August 8, 2004, an internet user with the identity "Voice of Reason," posted the following statements concerning Plaintiff in a message to alt.seduction.fast.[12] Following is a screenshot of this posting taken on August 13, 2004 at 10:13 a.m. EST:

---

[11] The full text of the message is attached hereto as Exhibit E-2 and incorporated by reference as if fully set forth verbatim herein.
[12] The full text of the message, posted through Google and archived by Google, is attached hereto as Exhibit F-1 and incorporated by reference as if fully set forth verbatim herein.



73.  Plaintiff replied to this message by pointing out that it would be extortion, to give the author a chance to clarify his motive and intent.  In response to this, the "Voice Of Reason" again posted to ASF on August 9, 2004 (screenshot below is taken from August 13, 2004), a message archived by Google[13] which showed that the author was not mincing words in the original message:



---

[13] The full text of the message, posted through Google and archived by Google, is attached hereto as Exhibit F-2 and incorporated by reference as if fully set forth verbatim herein.

74. Plaintiff avers that the attempt to extort a "tax" in return for "allowing" him to post to USENET, and to give the money to www.fastseduction.com (the website of Learn The Skills Corporation, whom Plaintiff is already suing) constitutes a violation of the Hobbs Act (18 USC §1951 *et seq.*), and was made in furtherance of the RICO enterprise.

75. The predicate acts listed above are but a few examples of dozens if not hundreds of other predicate acts based on intimidating Plaintiff. Since this is a complaint for more than just RICO violations, Plaintiff has pled the enterprise minimally, and will outline the entire conspiracy in his RICO case statement or in an amended complaint should this Court deem it necessary. The predicate acts here are "Google-specific" in that Google's search engine is relied upon by the enterprise to further its aims. The overall enterprise is much larger than what is pled here.

76. For this pattern of racketeering activity, Google became the RICO enterprise, as it had to be corrupted by the conspirators who found that they could no longer place the RayFAQ on websites without it being taken down pursuant to the DMCA.

### Prior Notification/Mitigation Of Damages

77. Google's original response to Plaintiff's notifications regarding the conduct cited in this lawsuit could best be described as intransigence: it claimed immunity under §230 for the defamation, and has held firm regarding the issue of the search-results "biography" caused by typing Plaintiff's birth name into its engine. Google's inaction despite being notified by Plaintiff draws the inference that their decision to continue its conduct is willful.

78. In Parker v. Wintermute, Plaintiff served Google with a subpoena duces tecum for the entire contents of the RayFAQ website. Google was thus first made aware of the situation at that time. The subpoena was issued on or about October 17, 2002.

79. On February 27, 2003, Plaintiff wrote a letter to Google notifying them of the actionable conduct.[14] He put Google on notice that he was being damaged by the conduct which forms the basis of this lawsuit. Google responded by doing nothing.

80. On August 12, 2004, in light of Grace v. Ebay, Plaintiff notified Google that he believes that this will become the law of this land and that he will in fact litigate the issues first raised in his letter of February 27, 2003. He also instructed Google to remove a post by "Hcapper" (Doe #3 in Parker v. Wintermute) from its archives. Plaintiff later learned that Hcapper's postings generally do not show up in the Google archives for very long, as they are removed either by the user or not archived in the first place.

81. On August 13, 2004, Plaintiff notified Google that because they had not disabled the search results for his name, that he had no choice but to litigate, and he advised Google that they should take steps to mitigate past damage.

82. On August 17, 2004, Plaintiff notified Google of two more messages that he did not want in its archive.[15] They including the following statements:

   a.   A message by MarciaDP@aol.com of August 9, 2004 which defamed Plaintiff by claiming he had a "rape fantasy/wish fulfillment" (and which used his birth name); and

   b.   A message by "Brian Anthony" of August 15, 2004, entitled "Ray Gordon's Address and Phone Number" in response to a third party's posting of a belief that Plaintiff needed to be involuntarily committed, a threat to "call friends in Harrisburg" to make this happen, and citation from the Pennsylvania Code which allegedly supported this contention.

---

[14] The entire text of the letter is attached hereto as Exhibit G-1 and incorporated by reference as if fully set forth verbatim herein.
[15] The latter of August 17, 2004 is attached hereto as Exhibit G-4 and incorporated by reference as if fully set forth verbatim herein.



Following is the relevant excerpt from the message:

>
> Incorrect.
>
> Just a snippet, because I do not subscribe to the "Copy and paste when someone
> can look it up themselves" method:
>
> § 7304. Court-Ordered Involuntary Treatment Not To Exceed Ninety Days.
> (a) Persons for Whom Application May be Made.--
>
> A person who is severely mentally disabled and in need of treatment, as defined
> in section 301(a), may be made subject to court-ordered involuntary treatment
> upon a determination of clear and present danger under section 301(b)(1)
> (serious bodily harm to others)
>

Yep.
Anyway, here's that address you were looking for (below)
        - Gordon Roy Parker,
        (aka. Ray Gordon, psycho/asshole)
        4247 Locust St, Apt 806,
        Philadelphia, PA 19104
        Phone: 215-386-7366
Gordon, Ray  (EVCKISKKZI)
amoderncaveman@aol.com
Snodgrass Publishing Group [suspected SCAM business]
P.O. Box 42814
Philadelphia, PA 19104
Phone: 215-386-3414

83.  Plaintiff avers that this message was posted in retaliation for his having filed a lawsuit

against Doe #3 in this action (hcapper@aol.com), in violation of 18 USC §1510-13 *et seq.*,

relating to intimidation of a federal litigant or witness, including interference with his employment and livelihood.

84. By selling advertisements over its archive of this posting, Google has profited from it in the form of direct "sponsored link" advertising revenue.

## COUNT I: COPYRIGHT INFRINGEMENT OF REASON #6

85. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-84 above.

86. Plaintiff avers that he is the valid owner of the copyright to *29 Reasons Not To Be A Nice Guy*, including the Reason #6 that he posted to USENET.

87. Plaintiff avers that Google's archiving of Reason #6 constitutes a willful infringement of his copyright, or alternatively, the inevitable byproduct of Google's USENET archive, which provides for "involuntary archiving" of USENET postings, including those

88. Plaintiff avers that Google has profited from the infringement set forth hereinabove through the sale of advertising, and by luring revenue-generating traffic to its website.

89. Plaintiff avers that every time someone accessed or accessed the archived "Reason #6" posting, it constitutes a separate act of copyright infringement.

90. Plaintiff avers that absent injunctive relief enjoining future violations, that his copyrights will continue to be systematically violated through the involuntary archiving of his USENET postings.

91. Plaintiff is entitled to statutory damages in an amount no greater than ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($150,000.00) for each infringement pursuant to The Copyright Act, 17 U.S.C. §504 (c).

92.  Plaintiff is entitled to any past, present or future profits or pecuniary equivalents, including but not limited to the value of any relevant goodwill, which Google has realized or may realize in the future as a result of its infringement.

93.  Plaintiff is entitled to an order of this Court enjoining Defendant from engaging in or allowing similar infringement of his work in the future, including but not limited to an order prohibiting Google from archiving USENET in a manner that allows for the type of infringement set forth herein.  The absence of such an order will cause permanent and irreparable harm to Plaintiff that cannot be quantified monetarily.

94.  Plaintiff is entitled to recover the costs of bringing this claim, including reasonable attorney fees.

## COUNT II: COPYRIGHT INFRINGEMENT (USENET)

95.  Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-94 above.

96.  Plaintiff avers that Google has infringed Plaintiff's copyright of his USENET postings by compiling, and publishing to third parties, a derivative work that includes them whenever someone searches for his name or e-mail address in its USENET archive.

97.  Plaintiff avers that Google's publication of compilations of Plaintiff's USENET postings constitutes a willful infringement of his copyright.

98.  Plaintiff avers that absent injunctive relief enjoining future violations, that his copyrights will continue to be systematically violated through the involuntary archiving of his USENET postings.

99.  Plaintiff is entitled to any past, present or future profits or pecuniary equivalents, including but not limited to the value of any relevant goodwill, which Google has realized or may realize in the future as a result of its infringement.

100. Plaintiff is entitled to an order of this Court enjoining Defendant from engaging in or allowing similar infringement of his work in the future, including but not limited to an order prohibiting Google from archiving USENET in a manner that allows for the type of infringement set forth herein.

101. Plaintiff is entitled to recover the costs of bringing this claim, including reasonable attorney fees.

### COUNT III: COPYRIGHT INFRINGEMENT (WEB SEARCH ENGINE)

102. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-101 above.

103. Plaintiff avers that Google's internet search engine and cache infringe upon Plaintiff's copyrighted works (such as the content of his website, used to generate the search results), and repeat any infringement of said works that may occur elsewhere on the internet and be republished through its cache.

104. Plaintiff avers a separate infringement for each time his copyrights have been violated, in a number to be established at trial.

105. Plaintiff avers that absent injunctive relief enjoining future violations, that his copyrights will continue to be systematically violated through the indiscriminate archiving, indexing, and caching of websites without prior permission.

106. Plaintiff is entitled to any past, present or future profits or pecuniary equivalents, including but not limited to the value of any relevant goodwill, which Google has realized or may realize in the future as a result of its infringement.

107. Plaintiff is entitled to an order of this Court enjoining Defendant from engaging in or allowing similar infringement of his work in the future, including but not limited to an order

prohibiting Google from archiving websites in a manner that allows for the type of infringement set forth herein.

108. Plaintiff is entitled to recover the costs of bringing this claim, including reasonable attorney fees.

## COUNT IV: DEFAMATION

109. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-108 above.

110. Google acted with actual malice against Plaintiff because it either knew or should have known of the defamation against Plaintiff in its archive, and because it refused to remove access to it through searches for Plaintiff's name, or the messages themselves.

111. Google has acted with common-law malice against Plaintiff, because a) it has been accused of practicing age discrimination in employment, whereas Plaintiff has filed antidiscrimination "whistleblower" lawsuits that Google is well aware of;[16] b) because Plaintiff is a competing internet publisher, and c) because of the events set forth herein.

112. As a direct and proximate result of Defendant's wanton and willful conduct, Plaintiff has suffered pecuniary harm in the form of lost wages, lost business revenue, pain and suffering, lost goodwill, lost potential employment, and lost accumulated wealth.

113. Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

114. Plaintiff is entitled to punitive damages in an amount to be determined at trial.

115. Plaintiff is entitled to injunctive relief sufficient to prevent future libel.

116. Plaintiff is entitled to recover the costs incurred in bringing this claim.

---

[16] Google has a pecuniary interest in Plaintiff losing his lawsuits, not obtaining employment, or otherwise damaging his work history, as it would make Plaintiff less likely to sue Google itself in the future for discrimination, as his standing would be weakened.

## COUNT V: INVASION OF PRIVACY

117. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-116 above.

118. Plaintiff avers that the act of "Googling" him on the Google website (i.e., typing his birth name into the search engine for the web or USENET) constitutes an unauthorized biography of Plaintiff that is an invasion of his right to privacy every time search results relating to his name, his business, or his copyrighted works is produced in response to a user query.

119. Plaintiff avers that he has been "Googled" by third parties many times during the period in controversy in this action and continues to be "Googled" on a regular basis as per the actions of the RICO conspirators, potential employers and investors, his customers, and other third parties with whom Plaintiff interacts.

120. Plaintiff avers that Google's website collectively portrays him in a defamatory false light as the direct result of the conduct set forth herein, in a manner which a reasonable observer would find highly offensive, and that it has shown reckless disregard for the truth in allowing itself to collect any and all defamation against Plaintiff which is anywhere on the internet and literally rebroadcasting it to the entire globe.

121. Plaintiff avers that realizing advertising revenue from illegal searches of Plaintiff's name constitute a violation of his right to publicity.

122. Plaintiff avers that the republication of the RayFAQ, and any resulting pecuniary gains, constitute separate and whole violations of his right to publicity and/or an invasion of his privacy each time his name is searched on Google.

123. As a direct and proximate result of Defendant's wanton and willful conduct, Plaintiff has suffered pecuniary harm in the form of lost wages, lost business revenue, lost goodwill, pain

and suffering, lost potential employment, and lost accumulated wealth, because his reputation in the eyes of others has been unjustly diminished.

124. Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

125. Plaintiff is entitled to punitive damages in an amount to be determined at trial.

126. Plaintiff is entitled to injunctive relief sufficient to prevent future defamation.

127. Plaintiff is entitled to recover the costs incurred in bringing this claim.

## COUNT VI: NEGLIGENCE

128. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-127 above.

129. Plaintiff avers that Defendant Google had and has a duty to protect Plaintiff from harm from illegal conduct in the daily course of its business.

130. At all relevant times in this action, Defendant Google was aware of the harm that was coming to Plaintiff, its role in said harm, and refused to take actions which would have prevented and/or stopped the harm.

131. Plaintiff is entitled to relief under the Pennsylvania tort of negligence.

132. Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

133. Plaintiff is entitled to injunctive relief sufficient to prevent future negligence.

134. Plaintiff is entitled to recover the costs incurred in bringing this claim.

## COUNT VI: LANHAM ACT VIOLATIONS

135. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-134 above.

136. Plaintiff avers that Google's unilateral republication of material for which it has not obtained permission that belongs to Plaintiff constitutes misleading designation of origin and unfair competition ("passing off") under the Lanham Act, in a manner likely to cause confusion

among consumers regarding both the origin of the protected work, and Google's right to use it in the course of its business. [17]

137. Plaintiff avers that the republication of defamation against Plaintiff in Google's archives constitutes trade disparagement under the Lanham Act in a manner that will cause consumers to be less likely to do business with or otherwise associate with Plaintiff.

138. As a direct and proximate result of Defendant's wanton and willful conduct, Plaintiff has suffered pecuniary harm in the form of lost business revenue, lost goodwill, pain and suffering, lost potential employment, and lost accumulated wealth. Defendant Google has also enriched itself illegally through the conduct averred herein.

139. Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

140. Plaintiff is entitled to punitive damages in an amount to be determined at trial.

141. Plaintiff is entitled to injunctive relief sufficient to prevent future negligence.

142. Plaintiff is entitled to recover the costs incurred in bringing this claim.

### COUNT VIII: RICO VIOLATIONS PREDICATED ON 18 USC §1962(a)

143. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-142 above.

144. Google is the RICO enterprise, a separate entity which functions legitimately as an internet search engine, and has been corrupted by the RICO conspirators (the publisher of the Geocities website, "Mr. Brown," and the "Voice of Reason"), who use Google to further their RICO conspiracy.

145. Both "Mr. Brown" and the publisher of the Geocities website furthered the RICO enterprise by violating the Sarbanes-Oxley Act (18 USC §1513(e)) by attempting to interfere

---

[17] Google's logic, applied to the offline world, could yield us "Google TV," whereby Google broadcasts every television station in its cache, and sells its own advertising, or "Google University," where it uses materials from other universities to form its curriculum. There is already "Google News," which culls headlines and stories from all over the world to present to internet readers.

with Plaintiff's employment in retaliation for his having reported the federal crime of terroristic

threats over the internet against Wintermute (as detailed in the RayFAQ). Publication of the

RayFAQ also violates 18 USC §1512-13 *et seq.* in that its purpose is to intimidate a federal

litigant for the purpose of hindering and in retaliation for prosecution of a federal civil action.

146. The "Voice of Reason" furthered the RICO enterprise by attempting to extort money

from Plaintiff through intimidation in violation of the Hobbs Act (18 USC §1951 *et seq.*).

147. Imasaxist@aol.com furthered the RICO enterprise in violation of 18 USC §1962(c)

and §1962(d) by threatening Plaintiff under color of law with involuntary commitment (as

averred herein).

148. "Brian Anthony" furthered the RICO enterprise in violation of 18 USC §1962(d) by

aiding and abetting when he supplied Imasaxist@aol.com with Plaintiff's birth name and home

address. He also committed the predicate act of violating 18 USC §1512-13 *et seq.* through

intimidation of a federal litigant/witness in retaliation for his having filed suit against

thehcapper@aol.com.

149. The pattern of racketeering in controversy in this action began on July 23, 2004, and

involves a use of Google as the RICO enterprise which mimics that used by other conspiracies

over the past few years. It continues through the present.

150. The predicate acts (and other overt acts in furtherance of the conspiracy) have the

same or similar purposes (injuring Plaintiff's business and property), results, participants, and

methods of commission.

151. The RICO enterprise is an ongoing concern and threat to Plaintiff that will not cease

its conduct without judicial intervention. Indeed, any new conspirators can just as easily use

Google in the manner used by the current RICO enterprise, against Plaintiff, or literally anyone

in the world.

152. Google profits from the RICO enterprise in violation of 18 USC §1962(a) because it knows that its policy of nonintervention increases traffic to its site, its revenue, while depleting the revenue of those who are defamed, individuals Google has no interest in preserving the personal or professional reputations of since they are ultimately its competition.

153. Google further profits from the RICO enterprise by selling "sponsored link" advertisements directly connected to the predicate acts averred herein, such as the posting outlined in Paragraph 82 above (see also exhibit G-4).

154. As a direct and proximate result of Defendant's wanton and willful conduct, Plaintiff has suffered irreparable pecuniary harm in the form of lost wages, lost business revenue, lost goodwill, lost potential employment, and lost accumulated wealth.

155. Plaintiff is entitled to compensatory damages in an amount to be determined at trial, trebled, pursuant to 18 USC §1964(c).

156. Plaintiff is entitled to punitive damages in an amount to be determined at trial.

157. Plaintiff is entitled to injunctive relief sufficient to prevent future Lanham Act violations by Google.

158. Plaintiff is entitled to recover the costs incurred in bringing this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. Unspecified compensatory damages in an amount to be proven at trial, trebled for any RICO violations, and which is not less than TEN BILLION DOLLARS ($10,000,00.00 US)

2. For each count, the maximum punitive damages allowed by law.

3. Injunctive relief prohibiting Google from archiving future defamation against Plaintiff or his business.

4.  Injunctive relief prohibiting Google from continuing it's "opt out" copyright policy, and requiring it to obtain express permission of the copyright holder prior to including any website in its cache or search results.[18]

5.  Injunctive relief prohibiting Google from returning any search results from its web or USENET archives for the terms "Gordon Roy Parker," "Gordon Parker," or "Snodgrass Publishing Group."

6.  Injunctive relief requiring Google to remove any postings in its archives for which it has been notified by Plaintiff that the posting is either defamatory or an infringement of his copyright or which violates any of his legal rights as set forth in any notice.

7.  Costs of suit, including any reasonable attorney fees.

8.  Such other and further relief sufficient to terminate the actionable conduct, or which this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands trial by jury in this matter.

This the 18th day of August, 2004.

_Gordon Roy Parker_
Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366
E-mail: SnodgrassPublish@aol.com
Plaintiff, Pro Se

---

[18] Google's search results are culled from the copies of the websites copied into its index without permission, and are quoted within the results. Allowing this business model to continue will prevent the development of human-edited directories that do not offer the "garbage" collected by Google's web and USENET "spider" bots.

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER**, d/b/a Snodgrass Publishing Group, 4247 Locust Street, #806, Philadelphia, PA 19104,<br><br>Plaintiff<br><br>v.<br><br>**GOOGLE, INC.**, a Delaware corporation doing business in Pennsylvania, c/o Corporation Service Company 2711 Centerville Road, Suite 400 Wilmington, DE 19808.  and John Does #1-50,000,<br><br>Defendants | CASE NO.:<br><br>Judge: |

## VERIFICATION

I, Gordon Roy Parker, Plaintiff, date of birth January 6, 1967, domiciled at 4247 Locust Street, Philadelphia, Pennsylvania, hereby attest, under penalty of perjury, that all statements of fact contained within the foregoing **COMPLAINT AGAINST GOOGLE, INC.** are true to the best of my knowledge.

This the 18th day of August, 2004.

_Gordon Roy Parker_
Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366
E-mail: SnodgrassPublish@aol.com
Plaintiff, Pro Se