

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GORDON ROY PARKER,     Plaintiff | |
| **FILED** | **CASE NO.:** 04-cv-3918 |
| v.   JUN 1 9 2006 | **Judge: R. Barclay Surrick** |
| GOOGLE, INC.,   MICHAEL E. KUNZ, Clerk By_____ Dep. Clerk | |
| Defendant | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY FEES

      Plaintiff in the above-styled action submits this response to Defendant's Motion For Attorney Fees, .and submits the following opposition:

      1.    Awarding attorney fees against a pro-se litigant is a violation of the Equal Protection Clause because it gives the party with the attorney the opportunity to keep a meter running that is not applied to Plaintiff, who cannot recover fees in the event he prevails. This prejudices any litigation against a pro se litigant, as the opposition has no fear of an attorney fee award, and therefore less incentive to settle or reduce its own costs.

      2.    Google has stated an ulterior motive in seeking fees, namely to "deter [Plaintiff] from future litigation follies, which is further evidenced by its offer to drop its claim for fees here in return for Plaintiff refusing to appeal.

      3.    Plaintiff had alleged a registered copyright, namely "Reason #6" of his "29 Reasons Not To Be A Nice Guy," and infringement of that copyright. At the very least, any attorney fees "devoted to the copyright claim" should be further subdivided to exclude any claims based on Reason #6 and third-party infringement.

      4.    Any claims alleged to be based on "unregistered works" in the future could easily have been registered prior to filing suit, while the solution to any problem created by past

unregistered works could have been corrected by a simple stay and registration by Plaintiff. The wholesale infringement of Plaintiff's works and the instantaneous nature of USENET and web communication is such that registration would not only be impractical, but would impede Plaintiff's ability to participate in internet discussions.

5.     Claims relating to any unregistered works and the "author search" feature of Google's USENET archive, if not covered by copyright law, are covered by right-to-publicity law, and thus filed in good faith and relating to the same facts as the copyright case. To the extent that Google would not have been given an implied license to archive USENET, the right-to-publicity claim would have survived, and any fees incurred by Google in defending the copyright claim would have gone to defending a right-to-publicity claim based on identical underlying facts.

6.     Plaintiff alleged facts in his Complaint relating to the registered works on his website (including "29 Reasons" and four other registered works), which are indexed by Google for its search results and which therefore constitutes infringement.

WHEREAS, Plaintiff seeks an order denying the instant motion, or in the alternative a reduction of any award, and a stay of the enforcement of any judgment pending the appeal in this case.

This the 19th day of June, 2006.

_____
Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366
E-mail: GordonRoyParker@aol.com
Plaintiff, Pro Se

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER,** <br><br> Plaintiff <br><br><br> v. <br><br><br> **GOOGLE, INC.,** <br><br><br> Defendant | **CASE NO.:** 04-cv-3918 <br><br> **Judge: R. Barclay Surrick** |

<u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S</u>
<u>OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY FEES</u>

Plaintiff submits this Memorandum in Support of the instant motion:

**FILED**

JUN 19 2006

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## I.     INTRODUCTION

Defendant Google, whose market capitalization is well into the billions, and projected

to continue growing, is seeking $11,527.37 in attorney fees after obtaining judgment in this

action.  Plaintiff filed a Notice of Appeal and In Forma Pauperis petition on Friday, June 16,

2006, and incorporates both of those pleadings by reference as if fully stated verbatim herein.  In

his financial affidavit, Plaintiff showed an income of slightly less than $8,000.00 per year.

Defendant is seeking a sanction equivalent to more than what Plaintiff earned in each of the last

few years.

That Google cares less about recovering its actual attorney fees and more about

"stinging" Plaintiff into bankruptcy (should it attempt to enforce the judgment) should be

obvious to even the casual observer, and even more obvious to this court considering that Google

offered, by telephone, not to seek attorney fees if Plaintiff would simply drop his appeal.  Since

literally the future of the internet is at stake in this case, Plaintiff is concerned less about the

$11,527.37 than he is that his constitutional right to appeal is preserved; that said, Plaintiff still

opposes a fee award, given the extreme level of public interest in this case, which was covered

by news media worldwide, including, for example, the front page of ***The Wall Street Journal.***
The public interest in this case is not only obvious, but compelling, and hardly the "folly"
defendant makes it out to be.  Google can hardly argue, with its $10 billion in cash, that a stay of
any award on appeal would prejudice it in any fashion.

What Defendant Google has done to Plaintiff over the past half-decade would have
been thought a horror movie but a decade earlier: they make wholesale copies of Plaintiff's
website, use that content to build their search engine, return snippets of that content when
valuable "ready to buy" internet users search for terms contained on his website, and then use
those snippets to sell advertising that is paid for by Plaintiff's competitors.  About the only
analogy to this transaction that Plaintiff could ever recall seeing came from the movie ***Batman***,
where the Joker motioned for his assistant to loan him his gun, and then he used the gun to shoot
dead the assistant.  Google literally cashes the paychecks of Plaintiff and anyone else similarly
situated, as it is sites like Plaintiff's that are the Point B for Google's users; Google's search
engine is but a means to that end, and it operates only because of what is now court-sanctioned
copyright infringement.

## II.    LEGAL STANDARD

### A.    Legal Standard For Abuse Of Process

In its order dismissing this case, this Court summarized the elements of an abuse
of process claim in Pennsylvania:

> In Pennsylvania, abuse of process involves a ***perversion of the legal process to
> accomplish some unlawful purpose for which it was not designed.*** Al Hamilton
> <u>Contracting Co. v. Cowder</u>, 644 A.2d 188, 191 (Pa. Super. Ct. 1994). "The classic
> example" of abuse of process "is the initiation of a civil proceeding to coerce the
> payment of a claim completely unrelated to the cause of action sued upon."
> <u>Triester v. 191 Tenants Ass'n</u>, 415 A.2d 698, 702 (Pa. Super. Ct. 1979).

While this court declined to base an abuse of process claim upon what Plaintiff considered a defamatory claim in Defendant's motion to dismiss, Google's own motion shows an improper motive in its filing. Specifically, Google states that

> "while the amount requested will not make Google whole, it will afford a measure of redress and *may serve to deter Parker from future litigation follies.*"[1]

It is one thing to use a motion for attorney fees to recover attorney fees, and quite another to use it for an unlawful purpose wholly unrelated to the purpose of the motion, namely to attempt to deny Plaintiff his constitutional access to the courts through the threat of, and execution of the threat of, a motion for attorney fees that is maliciously motivated, makes conclusory and disparaging statements about unrelated litigation and Plaintiff for filing same, and which represents what can only be characterized as a desperate attempt to avoid having the higher courts rule on key areas of copyright and defamation law that threaten Google's very existence.

Google has mischaracterized the nature of Plaintiff's copyright claims, which were filed in good faith, and which had sufficient merit and public interest to the point where such a lawsuit had been expected by the internet community, including Google, for many years. Indeed, an attorney in Nevada (Blake) filed a similar case to this one, and if anything, on a flimsier premise, as his copyright registration appeared specifically designed to give standing to such a suit. Plaintiff, on the other h and, is an internet publisher who can tie tangible business losses to the infringement he alleged.

**B.    Legal Standard For Attorney Fee Awards.**

Defendant appears to be relying on arguments based on this court finding this case to be without merit and filed for an ulterior purpose. Plaintiff avers that neither case applies here. The court has total discretion in this matter, as Defendant pointed out:

---

[1] Defendant's Memorandum, p. 1.

Under § 505 of the Copyright Act, the court has the discretion to award attorney's fees and non-taxable costs to a prevailing party in a claim brought under the Act: In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs. 17 U.S.C. § 505. The Third Circuit has opined on the discretionary nature of fee awards under Section 505: (1) a finding of bad faith is not required for an award; (2) *an award is not mandated in every case; and (3) the exercise of discretion should be approached in an evenhanded manner.* See Lieb v. Topstone Indus., Inc., 788 F.2d 151, 155-57 (3d Cir. 1986); also Fogerty v. Fantasy, Inc., 510 U.S. 517, 526 (1994). Operating within these boundaries, district courts are given considerable discretion in determining whether to award such fees to the prevailing party, and, if so, whether the amount requested is reasonable under the circumstances. *Lieb*, 788 F.2d at 155- 56 ("we may not usurp that broad area [of discretion] which Congress has reserved for the district judge."); Cottrill v. Spears, No. 02-3646, 2003 WL 21545105, at *1 (E.D Pa. July 2, 2003).

This is not a case of equals in terms of resources or internet muscle. Defendant has power over much of the internet, and has taken it upon itself to copy almost every piece of "information" it can get its hands upon. It has even taken to doing this with offline works, and has triggered similar lawsuits to Plaintiff's from both the Authors Guild and Publishers Guild. Any ruling in this case will affect those cases and vice versa.

### III.  STATEMENT OF FACTS

Google apparently could not be bothered to number its averments, so Plaintiff will construct them as best he can and respond:

1.  Google cites the court's finding that "the case law is clear that Google's activities do not constitute direct infringement." (Docket #18 at 5). Defendant then takes a leap of logic to claim that Plaintiff was "well advised" of this by Defendant's motion to dismiss. Obviously, the court had not ruled at the time of that motion, and the issue of Google's activities being legal or not had only been touched upon by the Nevada court in Blake v. Google (citation omitted), and then only very shortly before this case was ruled upon.

2.     The following quote by Google contains a level of ***chutzpah*** that would be unfathomable out of the mouth of anyone other than the company that believes it has an "implied license" to copy the entire internet and use that copy to sell advertising:

> The absurdity of Plaintiff's direct copyright claim was highlighted by the fact that Parker himself was responsible for the complained of "copying" by posting his own copyrighted work to the USENET in the first instance. (Defendant's Memorandum, p.2).

First things first: this is not a "statement of fact" but a conclusory allegation.

Google is trying to shift the blame for its own copyright infringement of Plaintiff's ***registered work,*** "29 Reasons Not To Be A Nice Guy," (See, e.g., Amended Complaint, ¶ 75, p. 29), saying that Plaintiff was somehow responsible for the infringement by posting a copyrighted work to USENET. This is akin to blaming a woman for being raped because of how she dresses, as Plaintiff has every right to expect that his copyright be respected, while Google, contrary to this court's finding that it "maintains the USENET," is a total outsider when it comes to USENET, which has no owner and which is run without Google's participation beyond messages distributed on its news server. Google's USENET archive goes a step further, making it possible to search specifically for Plaintiff's postings. It should finally be noted that on the one hand, Google claims that unregistered works don't confer standing, yet on the other, when Plaintiff had such standing, they claim it was his fault for being infringed.

3.     Google further misrepresents facts in its motion, citing this Court's misconstruction in its ruling:

> Parker's indirect infringement claims were dispatched for an even more fundamental reason: he failed to identify the presence of any registered works that were allegedly infringed, an absolute prerequisite to bringing a copyright infringement action. (Defendant's Memorandum, p. 2.).

4.     Paragraph 75 of the Amended Complaint demonstrates the presence of a registered work that was infringed. That paragraph states:

5

On or about March 28, 2003, Plaintiff posted "Reason #6" from his registered copyrighted work *29 Reasons Not To Be A Nice Guy* to ASF.[2] Doing this allows readers of USENET to read Plaintiff's writing without having to visit his website. The posting was only intended for the ASF audience. (Amended Complaint, ¶ 75).

5.   Google does not deny archiving third-party copies of this posting, which

was allegedly in paragraph 76 of the Amended Complaint, as follows:

In response to the posting, someone posting through an anonymous remailer at Denmark-based dizum.com (whose identity even Dizum does not know), reposted the entire message,[3] which was still archived by Google, as the following screenshot, taken by Plaintiff on Tuesday, August 3, 2004 at 5:24 a.m. shows:



6.   Plaintiff could not have made it any clearer: he posted his copyrighted work

with explicit instructions that Google not archive it (the x-no-archive header), someone copied

the post through an anonymous remailer, and Google archived the anonymous reposting of

Plaintiff's work, while profiting from the sale of sponsored links on the pages returning this

---

[2] As the docket shows, Plaintiff has previously filed the required copyright form with this court, and served a copy on the Library of Congress.
[3] The full text of the infringing anonymous message is attached hereto as Exhibit E-2 and incorporated by reference as if fully set forth verbatim herein.

infringed content.  That Google or this Court is trying to claim that the "sun rises in the west and sets in the east" does not make it fact.

> 7.   Google states, in its Memorandum (p. 3), that:
>
>> In addition, the Court rejected Parker's contributory infringement claim because he failed to plead a *prima facie* element of this claim: that Google had knowledge of infringing activity. *Id*. at 9-10. With respect to vicarious infringement, the Court ruled that Parker had failed to allege "obvious and direct financial interest" in any infringement. *Id*. at 11.

Copyright infringement of a registered copyright triggers statutory damages which are beyond the discretion of this court, so "financial interest" would not even be a factor. As for the claim that Google lacked knowledge of the infringing activity, Plaintiff had put them on notice via the DMCA, but even there, a DMCA notice should not have been necessary, given that Google profits from the infringement and is therefore not entitled to immunity.  Plaintiff is therefore entitled to statutory damages for the infringement, except for the court's finding that Google is a transitory provider, which it is not.  Since this court held Google to be a transitory provider, this is a legitimate issue for appeal, as the case does in fact turn on this finding, and yet another reason not to award fees, or to stay enforcement of any award pending resolution of all avenues of appeal.  Anything less would constitute a violation of Plaintiff's right to civil due process.

## IV.  ARGUMENT

### A.   Plaintiff's Claims Were Not Meritless.

As set forth in the statement of facts above, Plaintiff's claims were with merit.  His works were infringed, and only the finding that Google was a transitory provider under the DMCA gave it a true defense to the claims.  That issue of law was of such compelling public interest that it received global media coverage.  Had this court found the opposite, that Google was not a transitory provider, it would have had to severely alter its business model.  Plaintiff's lawsuit actually helped Google in that it established a finding highly favorable to its business

7

model on an issue of first impression not just in this jurisdiction, but the entire nation.  An appeal

will only further clarify the law.

An attorney fee award of any size on these grounds would not be justified.

**B.    Plaintiff Had No Improper Motive In Filing.**

Google's attempt to impute upon Plaintiff an improper motive is invalid.  Plaintiff, an

internet publisher, has a definite interest in protecting his copyrighted work, and sought redress

only for what he considered to be genuine infringement.  In the case of his unregistered works,

Google is a virtual "infringement machine" that makes it impossible to preempt future

infringements of works that can be easily copyrighted, and where requiring registration of each

individual work would halt the flow of free speech and ideas in the most cost-efficient means

ever devised.  In the case of <u>Napster</u>, injunctive relief was obtained to prevent future violations

of works yet to be created, and the RIAA was not told to send an endless stream of DMCA

notices, as Google would have Plaintiff do for what would be thousands of individual

infringements.

Google also claims that Plaintiff should treat its arguments in its motion as

"knowledge" of the law, yet Plaintiff was seeking an expansion of or an exception to that law,

which by its very nature would disagree with Defendant's position.  This is not malicious, but a

legitimate use of the judicial process.  An attorney fee award is therefore not justified upon these

grounds.

**C.    Plaintiff's Claims Were Not Unreasonable.**

Defendant states that:

> [N]o reputable attorney would have advised Mr. Parker to engage in pointless litigation
> with Google regarding alleged infringement of "Reason No. 6" of his copyrighted work
> "29 Reasons Not To Be a Nice Guy." Nor would a reputable attorney have advised Mr.
> Parker to ignore the text of the Copyright Act in favor of a theory where registration was
> not required based on the perceived administrative burden of registering. Indeed, it was
> precisely Plaintiff's lack of representation and unfamiliarity or unwillingness to comply
> with the rules constraining licensed attorneys that permitted this suit to be filed in the

> first instance. Accordingly, Parker's *pro se* status does not prevent the court from
> entering an award of attorney's fees and costs. (Defendant's Memorandum, p. 12).

Defendant has offered no expert testimony in support of its claims regarding what a "reasonable attorney" would have done. By the standard set forth in <u>Daubert</u>, these conclusory allegations are unsupported. Beyond that standard, Plaintiff argues simply that there is no reason why he wouldn't try to defend a registered copyright, as the act of registration itself is an act of protecting one's rights. The claims that constantly registering his USENET postings would burden Plaintiff seeks not to ignore the Copyright Act, but to acknowledge a legitimate exception to it. Even in the event that registration were required, the copyright infringement claims related to the "author search" feature on Google's USENET archive were based on facts identical to the right-to-publicity claim, and would have required the same attorney expenses in defending.

Defendant is mischaracterizing Plaintiff's claims, and attorney's fees should not be awarded on these grounds.

### D.   <u>Deterrence</u>.

Defendant cites several unrelated cases while stating a motive to curtail Plaintiff's ability to file lawsuits in the future. This goes well beyond the scope of the motion, as any "deterrence" would be aimed at similar future conduct. To the extent that Plaintiff merely plans to appeal, a negative ruling from the Third Circuit (or SCOTUS) would be all the deterrent that Plaintiff would require. Until that point, however, he deserves his day in court just like everyone else.

As for the individual cases cited by Defendant, Plaintiff has been attacked on several fronts by individuals who have conspired with each other to harm Plaintiff, and who have used Google as a weapon in their conduct (by manipulating their archives to harm Plaintiff's business and reputation).   The recital includes the following cases:

1.   **Parker v. Rodwell**. Plaintiff was unable to locate the defendant (who was not Rodwell but John Doe as a replacement), so the case was dismissed without

9

prejudice. This case was also filed in 2000, and should be "time barred" from consideration.

2. **Parker v. UPenn I and II**. The court (in the two Title VII cases) found that Plaintiff had met the standard for making a case, and dismissed it when it accepted Penn's reason for not hiring him (that it did not need to actively search its database for resumes). This was not a "frivolous" case in any way, and Penn's statements in this lawsuit, combined with their actions during that time, have given rise to a second lawsuit (Parker v. UPenn II) which has already survived a motion to dismiss on grounds of ***res judicata***. The facts alleged in Parker v. UPenn II, if true, will show that Penn won the first lawsuit through fraud and deception.

3. **Parker v. Tilles et al**. Libel case related to the Title VII case in which Tilles had claimed that Plaintiff had never applied for a job (the federal court held otherwise), and that he was "unsure" Plaintiff had worked for Penn, when University records obtained in discovery later showed that Penn had evidence that Plaintiff had worked there. No fees or sanctions resulted from this lawsuit.

4. **Parker v. Wintermute**. This case was a precursor to Parker v. LTSC I, II, and III. Plaintiff subpoenaed Penn (Wintermute's school) for Wintermute's name after Wintermute had threatened him with violence and defamed him. UPenn said it could not identify Wintermute, and over time, Plaintiff accumulated more and more evidence that this was perjury by Penn, trying to protect a student against criminal charges. Plaintiff had an IP address for Wintermute, a "static" one that did not change for months, yet despite serving a subpoena on Penn seven days after a posting by Wintermute, they said they couldn't find him. The motion to compel production was denied ***as moot.*** Plaintiff was unable to serve Wintermute because Penn hid his identity through perjury, and this has given rise to a retaliation claim against Penn. Those issues are not resolved.

5. **Parker v. LTSC I, II, and III**.   Parker v. LTSC I was dismissed because ***pro se*** defendant Thom E. Geiger caused a heightened scrutiny of Plaintiff's pleading that would not have otherwise caused dismissal. Plaintiff is also arguing on appeal of Parker v. LTSC II that Rule 8 is vague and overbroad because it does not specify a page limit. The second lawsuit was dismissed for lack of jurisdiction against several defendants, and the case was "refiled" in Delaware (as III) while being appealed here. As with the Penn case, this case (and the Wintermute) is still very much alive. The delays and dismissals relate almost exclusively to the difficulty of haling internet defendants into court.

Defendant is making conclusory allegations that Plaintiff's claims in other cases are

frivolous, despite a lack of foundation in the record for those cases. The "same parties" being

sued "over and over," have actively avoided service and/or continued the same conduct over

which they were being sued. Dismissals without prejudice speak for themselves, and the

rejection of Penn's ***res judicata*** motion is an admission by this very court that the reverse-discrimination (and retaliation) lawsuit against Penn is not based on the same theories, or the same facts.

Defendant's motive is the one which is in question here: it surely needs the $11,537.27 a lot less than it seems to need to be able to stop Plaintiff from litigating, perhaps winning a pending case, and being better able to fight Google itself. This court should concern itself only with the present action, otherwise it would reward the declaration of "open season" on any target, and reward those defendants who select popular targets for lawbreaking, while punishing those who are similarly targeted. This would have the impact of turning America into a junior high school lunchroom, where popularity trumps every other form of justice. Not only would such a result be unjustified, it would be un-American.

### E.   The Requested Attorney Fees Are Not Reasonable.

Plaintiff's recollection is that this district's definition of "reasonable" attorney fees are capped at $225.00 per hour (citations omitted due to time constraints). Beyond that, the lopsided finances of this situation make the focal point of any award, and Google's motion for same, to punish Plaintiff by becoming what can only be characterized as a "civil vigilante." Google has a vested interest in several of the other lawsuits, as they have archived much of the conduct over which Plaintiff is suing.

That there are defamation and invasion of privacy claims which were filed in addition to the copyright claims, the lawsuit as a whole may have been a losing one in the lower court, but by no means was it malicious or frivolous. If anything, the instant motion is an abuse of process by Google, as it clearly seeks to use this process as a means of obtaining an unrelated and unlawful result, a purpose for which it was not intended.

## **CONCLUSION**

For the reasons averred herein, the instant motion should be **denied.** Alternatively, any fee award should be stayed pending appeal.

This the 19th day of June, 2006.

_Gordon Roy Parker_

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366
E-mail: GordonRoyParker@aol.com
Plaintiff, Pro Se

(*30*)

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER,**<br><br>Plaintiff<br><br><br>v.<br><br><br>**GOOGLE, INC.,**<br><br>Defendant | **CASE NO.:** 04-cv-3918<br><br>**Judge: R. Barclay Surrick** |

## <u>ORDER</u>

**AND NOW,** this \_\_\_\_th day of _____, 2006, in consideration of

Defendant's Motion For Attorney Fees, the motion is **denied.**

SO ORDERED.


_____
J.